## CHRISMAN *v.* MILLER.

ERROR TO THE SUPREME COURT OF THE STATE OF CALIFORNIA.

No. 171. Argued March 8, 1905.—Decided April 3, 1905.

This court does not review questions of fact in cases coming from a state court but accepts the conclusions of the state tribunal as final.

Where an attempted mineral location is a failure by reason of a lack of discovery and all rights have been conveyed to a third party who formally relinquishes them, the land is again open to location and the party so relinquishing may locate it and become entitled thereto by subsequent discovery, and otherwise complying with the law, without waiting until the relinquished location lapsed by failure to do the annual work required by statute.

In controversies between two mineral claimants the rule as to sufficiency of discovery is more liberal than it is in controversies between a mineral claimant and an agricultural entryman, as in the latter the land is sought to be withdrawn from the category of agricultural lands, while in the former the question is merely one of priority.

While the statute does not prescribe what is necessary to constitute a discovery under the mining laws of the United States, it is essential that it gives reasonable evidence of the fact either that there is a vein or lode carrying precious minerals, or if it be claimed as placer ground that it is valuable for such mining; and where there is not enough in what a locator claims to have seen to justify a prudent person in the expenditure of money and labor in exploitation this court will not overthrow a finding of the lower court that there was no discovery.

THIS was an action in the Superior Court of Fresno County, California, to quiet title to certain lands in that county. The complaint by Miller and The Home Oil Company was filed October 14, 1898. The case was tried by the court without

a jury, findings of fact were made, and a decree entered in favor of the plaintiffs below. On appeal to the Supreme Court of the State this decree was affirmed (September 13, 1903). 140 California, 440. Thereafter the case was brought to this court on writ of error. The dispute between the parties was as to the validity of respective locations of the land under the mineral laws of the United States. The mineral found therein, and on account of which the locations were made, was petroleum. From the findings it appears that on June 14, 1895, eight persons, one Barieau being of the number, attempted to make a mineral location upon the tract in controversy, the same being an entire quarter section. Whatever interest they thus acquired was on December 24, 1896, conveyed to E. O. Miller. On December 31, 1896, Miller by his written declaration abandoned and relinquished all rights which he had acquired by this conveyance. On the same day and about four hours thereafter Miller and seven others, duly qualified to make entries, made a mineral location of the entire tract. Subsequently all interests obtained thereby were vested in the plaintiffs, defendants in error. On January 1, 1897, the defendants, plaintiffs in error, attempted to make a location of certain portions of the tract. The tenth, eleventh, fifteenth, seventeenth and eighteenth findings are as follows:

"X. That immediately after going into possession of said northeast quarter of said section 20, the said plaintiff, Home Oil Company, commenced digging, boring and excavating thereon for petroleum and other fluid products, and has expended in such work the sum of more than thirty thousand dollars, and by means of such digging, boring and excavating discovered large quantities of petroleum therein, and there now exists, and did at the commencement of this action, wells of great depth, sunk and excavated upon said property by said Home Oil Company, from which there is a daily flow of large quantities of petroleum of great value.

"XI. That ever since the 17th day of September, 1897, the said plaintiff, Home Oil Company, has been and is now

in the sole and exclusive possession of all of said real property and engaged in working, developing and mining the same and extracting petroleum and other fluid products therefrom."

"XV. That said defendant A. Y. Chrisman never at any time discovered a seepage of petroleum or other mineral oil upon said land or any part thereof, and the defendant H. T. Chrisman never discovered a seepage of petroleum or other mineral oil upon said land or upon any part thereof, and that the only discovery of petroleum or any other fluid produce upon said lands or upon any part thereof is the discovery made by the plaintiff Home Oil Company as in these findings before stated."

"XVII. That on the said 1st day of January, 1897, no part of the said northeast quarter of section 20 was vacant, public mineral land or open to exploration or location for mining purposes, but on the contrary the whole of said northeast quarter of said section 20 was then in the possession of J. A. Hannah, E. O. Miller, W. F. Hall, D. G. Overall, L. E. Hall, Harry Levinson, R. B. Biddle and Charles H. Smith, under and by virtue of their location of said land hereinbefore mentioned.

"XVIII. That the said defendants A. Y. Chrisman and H. T. Chrisman did not make the location for mining purposes hereinbefore mentioned in good faith, and did not nor did either of them enter into the possession thereof or any part of the same for the purpose of working and mining thereon on the 1st day of January, 1897, or upon any other date; and said defendants have not and neither of them has since the first day of January, 1897, or since any day whatever, done and performed upon said land or any part thereof such work and labor or made improvements thereon as is required by the laws of the United States or of the State of California; and that the said defendants have not been and neither of them has been in the exclusive possession of said tracts of land so claimed by them; and said defendants are not, and neither of them is in the possession of said tracts of land so claimed by them or

either of them, or any part thereof; and the said defendants ever since the said 1st day of January, 1897, or since any day whatever or at all have not been nor are they or either of them now entitled to the exclusive or any possession of the tracts of land claimed by them or any part thereof, nor are said defendants entitled, nor is either of them entitled, to the exclusive or any possession whatever of any part of said northeast quarter of said section 20, in township 19 south, range 15 east, Mt. Diablo base and meridian."

*Mr. Wm. H. Metson,* with whom *Mr. Joseph C. Campbell, Mr. Frank C. Drew* and *Mr. Philip Mansfield* were on the brief, for plaintiffs in error:

The Barieau location, in June, 1895, was a valid location, which divested the land of its status as part of the public domain and appropriated it to private claim and domain until the end of the year 1896. Rev. Stat. §§ 2320, 2324, 2329; act of February 11, 1897, 29 Stat. 526.

The *value* of a mineral deposit is a matter into which the Government does not inquire as between two mineral claimants. Inquiries of this character are confined to controversies between mineral and agricultural claimants. 1 Lindley on Mines, 2d ed., 609; *Tam v. Story,* 21 L. D. 440.

In order to except lands from a town site patent they not only must in fact contain minerals, or even valuable minerals, but they must contain mineral of such extent and value as to justify expenditures for the purpose of extracting them. *Deffeback v. Hawke,* 115 U. S. 392; *Davis v. Weibbold,* 139 U. S. 507; *Dower v. Richards,* 151 U. S. 658; *Migeon v. Montana, Ry. Co.,* 77 Fed. Rep. 249.

As to what constitutes a discovery of petroleum as between two mineral claimants see Cent. Dict. sub. "Discovery"; Copp's Mineral Lands, 2d ed., 559; *Book v. Mining Co.,* 58 Fed. Rep. 106, 120; *McShane v. Kenkle,* 44 Pac. Rep. 979; *Railway Co. v. Migeon,* 68 Fed. Rep. 811; *Erhardt v. Boaro,* 113 U. S. 527, 536; Donahue on Petroleum and Oil, 223; *Nevada Oil Co. v.*

*Home Oil Co.*, 98 Fed. Rep. 673; 1 Lindley on Mines, 2d ed., 779; Book of Job XXIX, 6; H. Höfer Das Erdöl, 1888; Loskiel History, 1788, translated by Ignatius La Trobe, London, 1794; Brannt, Petroleum, 8; O'Neil, Petroleum Industry, 5; Wright's Oil Regions of Pennsylvania; Thompson's Handbook on Petroleum, London, 1901, 3.

The alleged abandonment by Miller in December, 1896, was invalid, inoperative and of no effect because it was made with an intent and for the purpose of relocating the property by himself and others with him, and was not a true abandonment.

The locator of a placer claim, who has allowed his location to lapse by a failure to perform the necessary work, cannot abandon his claim with the intention of immediately making a relocation covering the same ground. As to what abandonment is see *Black* v. *Elkhorn Mining Co.*, 163 U. S. 445, 450; Bouvier, sub. "Abandonment"; *Stevens* v. *Mansfield*, 11 California, 363; *Richardson* v. *McNulty*, 24 California, 339; *St. John* v. *Kidd*, 26 California, 264; *Bell* v. *Bedrock Co.*, 36 California, 214; *McLeran* v. *Benton*, 43 California, 467; *Utt* v. *Frey*, 106 California, 392; *Trevaskis* v. *Pearl*, 111 California, 599; *McCann* v. *McMillan*, 129 California, 350; *S. C.*, 62 Pac. Rep. 31; *Buffalo Zinc Co.* v. *Crump*, 69 S. W. Rep. 572; 1 Lindley on Mines, 729.

Miller's December 31st location was invalid. There was a valid location at the time and the land was not open to exploration. *Belk* v. *Meagher*, 104 U. S. 279; *Souter* v. *McGuire*, 78 California, 545; *Gwillim* v. *Donnellan*, 115 U. S. 45; *Del Monte Min. Co.* v. *Last Chance Mining Co.*, 171 U. S. 55, 78.

It was not based on discovery and was not perfected by a subsequent discovery before plaintiffs in error's location.

Discovery is the source of title to mineral lands and the primary source of the miner's title thereto. Rev. Stat. §§ 2318, 2319, 2320; 1 Lindley on Mines, 2d ed. § 335 ; DeFooz on the Law of Mines, 26.

A location can rest only upon an actual discovery, and such

discovery must precede the location or be in advance of intervening rights. *Hawswirth* v. *Butcher,* 4 Montana, 299; *Upton* v. *Larkin,* 7 Montana, 449; *North Noonday M. Co.* v. *Orient M. Co.,* 6 Saw. 299; *Ledoux* v. *Forester,* 94 Fed. Rep. 600; *Perigo* v. *Erwin,* 85 Fed. Rep. 904; *Erwin* v. *Perego,* 93 Fed. Rep. 608; *Nevada Sierra Oil Co.* v. *Home Oil Co.,* 98 Fed. Rep. 673; *Olive Land & D. Co.* v. *Olmstead,* 103 Fed. Rep. 568; *Erhardt* v. *Boaro,* 113 U. S. 527, 536.

*Mr. L. L. Cory* for defendants in error:

All the asserted contentions of the plaintiffs in error are entirely dependent for their solution upon the determination of questions of fact, and the findings of fact of the trial court, affirmed by the Supreme Court of the State, are conclusive upon this court, and are determinative of all the questions raised by the plaintiffs in error. *Minneapolis & St. Louis R. Co.* v. *Minnesota,* 193 U. S. 53, citing *Dower* v. *Richards,* 151 U. S. 658; *Clipper Mining Co.* v. *Eli Mining & L. Co.,* 194 U. S. 220, and cases cited; *Thayer* v. *Spratt,* 189 U. S. 346; *Jenkins* v. *Neff,* 186 U. S. 230; *Bement* v. *Harrow Co.,* 186 U. S. 70; *Egan* v. *Hart,* 165 U. S. 188. It is, therefore, conclusive upon this court that the Barieau location, of June, 1895, was not a valid location, and did not divest the land of its status as part of the public domain, and that the Miller location of December 31st was valid.

The decision of the state court was correct. The Barieau location was void because of lack of discovery. As to what a discovery is see *Harrison* v. *Chambers,* 1 Pac. Rep. 362; *Shreve* v. *Mining Co.,* 28 Pac. Rep. 315; *Book* v. *Mining Co.,* 58 Fed. Rep. 106; *Waterloo Mining Co.* v. *Doe,* 56 Fed. Rep. 685; *King* v. *Mining Co.,* 152 U. S. 227.

The so-called abandonment by Miller was not necessary to open the land to relocation and the question of its validity is immaterial.

Plaintiffs in error are not in position to raise any question as to Miller's location. They have never been in possession,

are trespassers, and have never themselves made any discovery.

MR. JUSTICE BREWER, after making the foregoing statement, delivered the opinion of the court.

In cases coming from a state court we do not review questions of fact, but accept the conclusions of the state tribunals as final. *Clipper Mining Co.* v. *Eli Mining & Land Co.*, 194 U. S. 220, and cases cited in the opinion; *Kaufman* v. *Tredway*, 195 U. S. 271; *Smiley* v. *Kansas*, 196 U. S. 447.

By the findings of the trial court the Chrismans, plaintiffs in error, never made any discovery of petroleum or other mineral oil, did not make the attempted location in good faith, and never did any work on the tract. These findings were of date June 24, 1899, nearly two years and a half after their attempted location. It would seem from these facts that they had no pretense of right to the premises.

It is contended, however, that the Supreme Court, in its opinion, practically set aside these findings in one respect, and that is the discovery of petroleum. We do not so understand that opinion. The only reference made to the matter is in these words: "The alleged discovery of defendants under their location may be disposed of in a single sentence. It amounted to no more than the pretended discovery by Barieau;" and in reference to Barieau's alleged discovery the court said:

"Upon the question of discovery the sole evidence is that of Barieau himself. Giving fullest weight to that testimony, it amounts to no more than this, that Barieau had walked over the land at the time he posted his notice and had discovered 'indications' of petroleum. Specifically, he says that he saw a spring, and 'the oil comes out and floats over the water in the summer time when it is hot. In June, 1895, there was a little water with oil and a little oil with water coming out. It was just dripping over a rock about two feet high. There was no pool; it was just dripping a little water and oil, not much

water.' This is all the 'discovery' which it is even pretended was made under the Barieau location."

There is nothing in this language from which it can be inferred that the Supreme Court of the State set aside the finding of the trial court. All that it said was in answer to the contention of the defendants that they had made a discovery, and that contention the Supreme Court repudiated, leaving the finding of fact to stand as it was made by the trial court.

It is further contended that the location made by Barieau and his associates, and conveyed by them to Miller, did not lapse until midnight of December 31, 1896; that then it lapsed by reason of the failure to do the annual work required by statute; that Miller could not prior thereto abandon and relinquish that location, and at the same time make a new one, as he attempted to do on the afternoon of December 31, because the effect of such action would be to continue a possessory right to the tracts without compliance with the statutory requirement of work. Hence, as contended, the only valid location was that made on January 1, 1897, by the defendants. It may be doubted whether, in view of their want of good faith, the defendants can avail themselves of this contention, and, indeed, also doubted whether they could uphold their location by proof of a discovery by some other party. But it has no foundation in fact, for, as found by the trial and held by the Supreme Court of the State, the attempted location by Barieau and his associates in June, 1895, was a failure by reason of a lack of discovery. We have already quoted the declaration of the Supreme Court. The testimony referred to in that quotation, even if true, does not overthrow the finding. It does not establish a discovery. It only suggests a possibility of mineral of sufficient amount and value to justify further exploration.

By chap. 216, 29 Stat. 526, "lands containing petroleum or other mineral oils, and chiefly valuable therefor," may be entered and patented "under the provisions of the laws relating to placer mineral claims." By section 2329, Rev. Stat.,

placer claims are "subject to entry and patent, under like circumstances and conditions, and upon similar proceedings, as are provided for vein or lode claims." By sec. 2320, Rev. Stat., "no location of a mining claim shall be made until the discovery of the vein or lode within the limits of the claim located."

What is necessary to constitute a discovery of mineral is not prescribed by statute, but there have been frequent judicial declarations in respect thereto. In *United States* v. *Iron Silver Mining Company*, 128 U. S. 673, a suit brought by the United States to set aside placer patents on the charge that the patented tracts were not placer mining ground but land containing mineral veins or lodes of great value, as was well known to the patentee on his application for the patents, we said (p. 683):

"It appears very clearly from the evidence that no lodes or veins were discovered by the excavations of Sawyer in his prospecting work, and that his lode locations were made upon an erroneous opinion, and not upon knowledge, that lodes bearing metal were disclosed by them. It is not enough that there may have been some indications by outcroppings on the surface, of the existence of lodes or veins of rock in place bearing gold or silver or other metal, to justify their designation as 'known' veins or lodes. To meet that designation the lodes or veins must be clearly ascertained, and be of such extent as to render the land more valuable on that account, and justify their exploitation. Although pits and shafts had been sunk in various places, and what are termed in mining cross-cuts had been run, only loose gold and small nuggets had been found, mingled with earth, sand and gravel. Lodes and veins in quartz or other rock in place bearing gold or silver or other metal were not disclosed when the application for the patents were made."

This definition was accepted as correct in *Iron Silver Company* v. *Mike & Starr Company*, 143 U. S. 394, though in that case there was a vigorous dissent upon questions of fact, in

which Mr. Justice Field, speaking for the minority, said (p. 412): "The mere indication or presence of gold or silver is not sufficient to establish the existence of a lode. The mineral must exist in such quantities as to justify expenditure of money for the development of the mine and the extraction of the mineral." And again (p. 424): "It is not every vein or lode which may show traces of gold or silver that is exempted from sale or patent or the ground embracing it, but those only which possess these metals in such quantities as to enhance the value of the land and invite the expenditure of time and money for their development. No purpose or policy would be subserved by excepting from sale and patent veins and lodes yielding no remunerative return for labor expended upon them."

By the Land Department this rule has been laid down, *Castle* v. *Womble*, 19 L. D. 455, 457:

"Where minerals have been found and the evidence is of such a character that a person of ordinary prudence would be justified in the further expenditure of his labor and means, with a reasonable prospect of success, in developing a valuable mine, the requirements of the statute have been met. To hold otherwise would tend to make of little avail, if not entirely nugatory, that provision of the law whereby 'all valuable mineral deposits in lands belonging to the United States . . . are . . . declared to be free and open to exploration and purchase.' "

Some cases have held that a mere willingness on the part of the locator to further expend his labor and means was a fair criterion. In respect to this Lindley on Mines (1st ed.) sec. 336, says:

"But it would seem that the question should not be left to the arbitrary will of the locator. Willingness, unless evidenced by actual exploitation, would be a mere mental state which could not be satisfactorily proved. The facts which are within the observation of the discoverer, and which induce him to locate, should be such as would *justify* a man of ordinary

prudence, not necessarily a skilled miner, in the expenditure of his time and money in the development of the property."

It is true that when the controversy is between two mineral claimants the rule respecting the sufficiency of a discovery of mineral is more liberal than when it is between a mineral claimant and one seeking to make an agricultural entry, for the reason that where land is sought to be taken out of the category of agricultural lands the evidence of its mineral character should be reasonably clear, while in respect to mineral lands, in a controversy between claimants, the question is simply which is entitled to priority. That, it is true, is the case before us. But even in such a case, as shown by the authorities we have cited, there must be such a discovery of mineral as gives reasonable evidence of the fact either that there is a vein or lode carrying the precious mineral, or if it be claimed as placer ground that it is valuable for such mining.

Giving full weight to the testimony of Barieau we should not be justified, even in a case coming from a Federal Court, in overthrowing the finding that he made no discovery. There was not enough in what he claims to have seen to have justified a prudent person in the expenditure of money and labor in exploitation for petroleum. It merely suggested a possibility that the ground contained oil sufficient to make it "chiefly valuable therefor." If that be true were the case one coming from a Federal court *a fortiori* must it be true when the case comes to us from a state court, whose findings of fact we have so often held to be conclusive.

The judgment of the Supreme Court of California is

*Affirmed.*