Samuel W. McNabb, U. S. Atty., and Lewis M. Andrews, Asst. U. S. Atty., both of Los Angeles, Cal., and H. P. Dechant, Asst. to Sol., Department of Agriculture, of San Francisco, Cal.

Calvert Wilson, Charles S. McKelvey, and J. Everett Brown, all of Los Angeles, Cal., for defendants.

McCORMICK, District Judge.

This is a suit in equity for a perpetual injunction to restrain defendants from mining on certain land included within the San Bernardino National Forest. A temporary injunction forbidding mining on the property in controversy pendente lite was issued by Judge Hazel after a full hearing in court. The areas involved are not part of the public domain. They have been set apart and reserved from settlement for forest usages by presidential proclamation. See 26 Stat. 1103, and 27 Stat. 1049 and 1068.

The Secretary of Agriculture, under the authority of congressional act of June 4, 1897 (30 Stat. 35), and Act March 4, 1915 (38 Stat. 1101 [16 USCA § 497]), and prior to 1927, caused to be surveyed and laid out on such lands what are known as "special use areas," and long prior to any of the mining locations or activities of defendants there have been issued to numerous parties permits to use portions of such special use areas of the National Forest for public camp grounds, summer home sites, resort sites, and

recreational developments. See Reg. L–1, Dept. of Agriculture; also, Use Book, p. 151, Dept. of Agriculture. Pursuant to such permits, many entries have been made upon such land, and valuable and extensive improvements have been made by the permittees who have been paying to the government in consideration of the permits and use, amounts varying from $15 to $120 per annum. The later claims of defendants are based solely upon the validity of mining locations made in said National Forest. The locations were made by various defendants at different times from 1927 to 1931, inclusive. The first locations· were of approximately 20 lode claims which were later changed to placer claims and still later to associated placer claims, and finally, subsequent to the filing of this suit, a number of quartz or lode locations were filed by defendant Standley. It is conceded that all the placer locations are invalid, and the case therefore rests entirely upon the validity of the lode claims.

▮▮ It is definitely settled by decisions of the Supreme Court that the locations of mining claims confer no right in the absence of discovery. Cole v. Ralph, 252 U. S. 296, 40 S. Ct. 321, 64 L. Ed. 567. In other words, two elements are essential in a valid mining location: (1) Properly marking the boundaries of the claim. (2) Making a proper discovery of valuable mineral upon the claim.

The defendants do not contend that they have made any discovery of precious metals upon the lands on which they have filed location notices. Their claim is of a discovery upon the claims of deposits of certain nonmetallic industrial minerals known as feldspar and silica.

The Act of June 4, 1897, supra, expressly recognizes the right of persons to prospect, locate, and develop any mineral resource in forest reserves in the following language:

"It is not the purpose or intent of these provisions, or of the act providing for such reservations, to authorize the inclusion therein of lands more valuable for the mineral therein, or for agricultural purposes, than for forest purposes." 16 USCA § 475.

"Nor shall anything herein prohibit any person from entering upon such forest reservations for all proper and lawful purposes, including that of prospecting, locating, and developing the mineral resources thereof: Provided, That such persons comply with the rules and regulations covering such forest reservations." 16 USCA § 478.

"Upon the recommendation of the Secretary of the Interior, with the approval of the President, after sixty days' notice thereof, published in two papers of general circulation in the State or Territory wherein any forest reservation is situated, and near the said reservation, any public lands embraced within the limits of any forest reservation which, after due examination by personal inspection of a competent person appointed for that purpose by the Secretary of the Interior, shall be found better adapted for mining or for agricultural purposes than for forest usage, may be restored to the public domain. And any mineral lands in any forest reservation which have been or which may be shown to be such, and subject to entry under the existing mining laws of the United States and the rules and regulations applying thereto, shall continue to be subject to such location and entry, notwithstanding any provisions herein contained." 16 USCA § 482.

There has been no finding or determination by the Secretary of the Interior, or by his successor, the Secretary of Agriculture, that the lands in controversy are better adapted for mining or for agricultural purposes than for forest usages. The only official inspection or examination that has been made under the authority of the Land or Forestry Departments of the government resulted in all the forest lands being designated as nonmineral in character.

So, assuming that under the applicable statutes mining locations can be validly made in forest reservations without obtaining a permit from forest officers of the government, it is clear that the validity of such mining locations is to be determined by a comparison of the relative value of the lands in question for forest or mineral purposes. This is particularly true where the mining claim is for industrial or nonmetallic minerals. In order to constitute a valid location where the discovery is only of such minerals, it must reasonably appear that the mineral has been found in place in sufficient quantities and of such quality as would justify a person of ordinary prudence in the further expenditure of his time and money in an effort to develop a paying mine. Cameron v. U. S., 252 U. S. 450, 40 S. Ct. 410, 64 L. Ed. 659. And, although a discovery is made, the showing must reveal the probability of a mineral deposit of commercial value, or, in other words, one that can be mined with profit. The Circuit Court of Appeals for the Ninth Circuit in Steele v. Tanana Mines R. Co., 148 F. 678, 680, in discussing the requirements of a valid mineral discovery where there is a question as

to whether land is more adaptable for mining than for other purposes under land laws, said:

"But such prospects are not sufficient to show that the land is so valuable for mineral as to take it out of the category of agricultural lands and to establish its character as mineral land when it comes to a contest between a mineral claimant and another claiming the land under other laws of the United States. In Chrisman v. Miller, 197 U. S. 313, 25 S. Ct. 468, 49 L. Ed. 770, the Supreme Court affirmed the doctrine, which had previously been announced (1 Lindley on Mines, § 336, and cases there cited), that, when the controversy is between two mineral claimants, the rule respecting the sufficiency of a discovery of mineral is more liberal than when it is between a mineral claimant and one seeking to make an agricultural or other entry under the land laws. The reason for this distinction is said to be that, when land is sought to be taken out of the category of agricultural lands, the evidence of its mineral character should be reasonably clear, while in respect to a controversy between rival claimants to mineral land the question is simply which is entitled to priority."

And in United States v. Lavenson (D. C.) 206 F. 755, 762, the rule concerning mining claims in forest reserves is thus stated:

"Discovery is necessary to initiate a mining right. To constitute discovery, it is necessary that mineral-bearing rock in place be found, under such circumstances and of such a character that a reasonably prudent man, not necessarily a skilled miner, would be justified in expending time and money developing it, with the reasonable expectation of finding ore in paying quantities. This implies, not only that the conditions warrant a reasonably prudent man in so proceeding, with such reasonable expectation, but that the applicant for patent has that expectation."

See, also, Diamond Coal & Coke Co. v. U. S., 233 U. S. 240, 34 S. Ct. 507, 58 L. Ed. 936; In re Jefferson Montana Copper Mine, 41 L. D. 322.

█ If the established rule is applied to the evidence in this suit, it is clear that no valid mining location has been made by the defendants.

It appears from the evidence that throughout the mountains in this forest reserve outcroppings of feldspar appear, but in pockets or lenses that are generally shallow and there does not seem to be any substantial ledge deposits such as are found in other localities where feldspar is profitably mined. It is also clear that the quality of feldspar found in the mining locations of defendants is inferior to that found in abundance in other mining districts in California and Arizona.

It is urged by defendants that it is only by development work that there can be any demonstration of the commercial success of their claims, and therefore they should be permitted to pursue such work. I think, however, that the fair preponderance of the evidence establishes that only in two tunnel sites is there any prospect of feldspar ore recovery in substantial quantities, and, when the cost of transportation is added to that of mining, it shows that the venture is not commercially feasible. Moreover, the only actual mining that has been done on these locations has been at a loss and the available supply of marketable mineral has been so reduced by the work already done that continued exploratory operations do not appear to justify further expenditure of money, time, and energy. Under these circumstances, it is not probable that mining feldspar on the land in question can be carried on with profit, and, if we compare the relative adaptability of the land in question for forest and for mining purposes, it is obvious that the defendants' contentions are devoid of merit. It was long prior to 1927 that the area was set apart for forest usage and approximately $250,000 had been spent by the permittees in improving the special use areas before any of the feldspar claims were located. Many of these improved areas will be destroyed for the usages for which they have been set apart and for which they are peculiarly adapted if the later mineral claims of defendants are validated. Furthermore, there is evidence that points strongly to the conclusion that some of the mineral locations have not been claimed for mining purposes but really for land exploitation.

My conclusion is that under the evidence the land in question in this case has been set apart and reserved for forest usage and is nonmineral, and that it is established that feldspar cannot be profitably mined on the lode locations in controversy, and therefore the mining claims are invalid in law, and the temporary injunction should be made permanent, and it is so ordered.