Donald D. FRESH, Jacob H. Deterts a/k/a
Jake H. Deterts, Basil B. Fresh and
Jack L. Fresh, Plaintiffs,

v.

Stewart L. UDALL, Secretary of the
Interior, Defendant,

City and County of Denver, acting by and
through its Board of Water Commis-
sioners, Additional Defendant.

Civ. A. No. 7998.

United States District Court
D. Colorado.

April 22, 1964.

Carl H. Noel, and Howard K. Phillips, Denver, Colo., for plaintiffs; Lawrence M. Henry, U. S. Atty., for the District of Colorado, Arthur L. Fine, Asst. U. S. Atty., Denver, Colo., for Stewart L. Udall, Secretary of the Interior.

Wayne J. Fowler, Denver, Colo., for City and County of Denver.

DOYLE, District Judge.

This action was instituted against the Secretary of the Interior pursuant to Section 10 of the Administrative Procedure Act (Title 5 U.S.C. § 1009), seeking a declaratory judgment pursuant to Title 28 U.S.C. §§ 2201, 2202.

It is alleged that the Secretary unlawfully and arbitrarily refused to issue a mineral patent applied for by plaintiffs. The mining claims in question are described as Lots 2 and 5, Section 19, Township 5 South, Range 77 West, and

the SE¼ NE¼ and Lot 1, Section 24, Township 5 South, Range 78 West, 6th P.M., Colorado.

It appears from other allegations of the complaint that the United States initiated a contest against the plaintiffs' application for mineral patent covering the described lands and moreover, that the City and County of Denver was permitted to also intervene as an additional defendant.

Hearings on this contest were held before a Hearing Examiner, who by a decision dated July 21, 1961, held that the plaintiffs' mining claim was invalid for the reason that there had not been a sufficient showing of a valid discovery. An appeal from the decision of the Hearing Examiner was taken to the Director of the Bureau of Land Management. The Director, on December 21, 1962, affirmed the decision of the Hearing Examiner and finally, on February 1, 1963, the Assistant Secretary of the Interior approved the decision of the Director, Bureau of Land Management.

After the Hearing Examiner's decision of July 21, 1961, plaintiffs filed a supplemental application for patent seeking to include within the original patent application an allegation that deposits of sand and gravel having value in connection with the construction of dams, roads, and permanent improvements had been discovered.

There is other factual background material which need not be discussed here. It is sufficient to note that the plaintiffs had maintained that their original discovery occurred in 1948, at which time the land in question was not open to entry. Subsequently, in 1951, it was restored to mineral entry and the plaintiffs have been allowed to proceed as if the discovery occurred after the restoration.

The complaint which the Government filed after the plaintiffs had filed their application for a mineral patent alleged in general that the discovery was insufficient; specifically, the complaint alleged that no discovery of valuable material sufficient to support a mining location had been made within the limits of the claims; and, secondly, that the lands within the limits of the claims were nonmineral in character; and, thirdly, that the claims were not located and were not being held in good faith for mining purposes.

Plaintiffs filed an answer to this complaint denying these allegations and alleging that the lands having been restored to mineral entry were known or believed to be valuable for minerals; and 2) that the plaintiffs had been in open, notorious and continuous possession under color of right for the period prescribed by the Colorado statute of limitations for mining claims and they were thus entitled to patent.

The Board of Water Commissioners of the City and County of Denver also filed a complaint alleging that no discovery of valuable minerals sufficient to support a mining location had been made within the limits of the claims and also alleging that the intervening defendant had prior rights in and to the lands for use as part of the Dillon Reservoir Site, South Platte Project, State of Colorado.

According to the evidence of the plaintiffs, evaluated in a light most favorable to them, work on the claims in question dated back to 1948, at which time the plaintiffs had started digging a shaft which at the time of the hearing had reached a depth of thirty to thirty-two feet, and in addition had dug nine pits on the claim. Donald D. Fresh testified that he had no doubt that he would hit gold at bedrock because gold had been dredged in placer claims on every side of the claim and that in digging the shaft they found nineteen colors in a depth of four feet and that this had led them to believe it was rich property. Apparently, work stopped on the claims in 1958, but at the time of the hearing there was a drill on the property. Other witnesses testified in support of the testimony of Fresh. By and large, this testimony was to the effect that panning samples had been taken and that visible colors were observed. It also appeared that the claims were bounded on the north and east by three patented placer claims.

On behalf of the Government three mining engineers testified to extensive investigations which they made on various occasions prior to the hearing; for example, the witness Sholes was on the property on four different occasions commencing in August, 1956, and continuing to July, 1960. On the first occasion Sholes, together with another engineer, one Dow, spent an entire day on the claims taking samples from the shaft and from designated cuts. These witnesses testified that they were unable to observe any colors in samples which they examined except for a few fine specks of flour gold in one of the samples taken from the bottom of the shaft, but that these specks were so fine they could hardly be seen. On a second visit Sholes was unable to find any visible gold, and the same was true of his third visit. The last examination of Sholes, who was then accompanied by Lees and MacIntosh, was conducted on July 19, 1960. Samples were again taken and were panned and two fine flakes of gold were found. The black sand was saved and sent to the assayer. Sholes concluded from his four examinations that the amount of gold ore in the mining claims failed to indicate the presence of placer deposits. The others confirmed Sholes' testimony.

The witness Sholes also estimated that it would cost three times as much to operate the placer as you would get out of it. He said:

"We figured that an area of 95.37 acres would bedrock at varying depths averaging about 90 feet or 30 yards and would contain about 13,847,724 cubic yards. At $.0676, which figures about 6.76 cents per cubic yard, the gross value of that yardage would be $936,106.14. The gold that we found there, and a few flakes, is flour gold and not now recoverable except to a slight extent by commercial methods at present, but if recoverable to 95 percent a plant would be required which could handle 100 cubic yards per hour and would cost about $275,000. On a 24-hour basis the operating costs, not including the amortization, interest and taxes, would amount to about $395 per day. The amortization, interest and taxes and like expenses would cost about $100 per day. At 95 percent recovery, the value recovered would amount to about 6.42 cents per yard. On the basis of 100 yards per hour, 24 hours per day, there'd be processed about 2400 yards per day and the value of $154.13 would be recovered.

"The operating costs, then, would be that $395 plus $100, or $495 per day.

"We figure from that, then, that it would cost about three times as much to operate the placer as you'd get out of it."

It would appear then, that there is a conflict in the evidence—that on behalf of the plaintiffs here being that they observed at least promising indications of a gold deposit, whereas that on behalf of the Government was to the contrary; that is to say, the tests and observations failed to reveal indication of the existence of a deposit of placer gold.

The engineers on behalf of the Government rendered opinions based upon the identification and examination of the areas involved, the geology thereof and the assay results of samples taken from the respective areas, that a person of ordinary prudence would not be warranted in the further expenditure of his time and money with the reasonable expectation of developing a paying mine.

■■ That discovery is a prerequisite to the validity of a mining claim can not be disputed. See 30 U.S.C. § 23. Nor can it be contended that this requirement is not fully applicable to placer mining claims. See 30 U.S.C. § 35. The determinative issue here is quantum of evidence sufficient to constitute in law a discovery. Plaintiffs maintain that, based upon a consideration of the entire record, a patent should issue here because the evidence shows indications of mineral and further shows that the plaintiffs were willing to expend time and money

for exploration and since it is undisputed that they personally believed and had expectations of finding ore, this was sufficient. But is this enough? The Government, on the other hand, takes the position that the showing must be sufficient to lead a prudent man to conclude that expenditure of time and money is justified. Thus, the matter boils down to whether an objective or subjective standard governs.

The examiner noted that disclosure of commercial ore is not essential to the discovery, but further held that an adequate and sufficient discovery may not be based upon a showing of isolated deposits of gold found on the surface of a placer mining claim; that requirements of discovery are not met where the value shown is so slight in relation to the cost for removing the gold that a person of ordinary prudence would not be justified in the further expenditure of his labor and means with a reasonable prospect of success in developing a valuable mine.

In upholding the decision of the examiner, the Director of the Bureau of Land Management, in an opinion approved by the Assistant Secretary of the Interior, said:

"Where applicants for a mineral patent have shown no more than that there are bodies of low-grade minerals on their claims, and have not shown that there is a reasonable expectation that the minerals exposed on the claims lead to minerals of greater value in quantities which would cause a prudent man to expend his time and money in developing the claims, the applicants are not entitled to a mineral patent. United States v. Clyde Raymond Altman, et al., 68 I.D. 235 (1961). For the reasons stated, the amended application for mineral patent (Colorado 012970) is rejected."

I.

The first question pertains to scope and extent of review in this type of proceeding. The Government argues that the finding of the Secretary of the Interior is conclusive. In the absence of allegations of fraud or imposition, so the argument goes, the finding of the Secretary of the Interior is by law committed to his discretion; that he is authorized by law to adjudicate the validity of mining claims; that his determination is conclusive and not subject to judicial review in the absence of fraud or imposition. Cited in support of this are: Cameron v. United States, 252 U.S. 450, 40 S.Ct. 410, 64 L.Ed. 659; Standard Oil Co. of California v. United States, 9 Cir., 107 F.2d 402, and Ickes v. Underwood, 78 U.S.App.D.C. 396, 141 F.2d 546. The reasoning expressed in these cases is that the Government may dispense its bounty on such terms as it sees fit and that the executive agency which Congress has selected for the purpose of giving away public lands is peculiarly equipped to act in its behalf and that when it does act there is less reason than in other types of administrative action to subject its determination to judicial review. In the alternative, the Government maintains that even if the Secretary's findings are not conclusive, nevertheless, the finding that plaintiffs did not make a valid discovery of valuable minerals is supported by substantial evidence and that the decision cannot therefore be regarded as arbitrary. In essence, the plaintiffs maintain that the decision is arbitrary; that the entire record demonstrates an adequate discovery supported by sufficient evidence of the presence of gold to lead to this conclusion as a matter of law.

The argument of the Government, that the decision of the Department is conclusive, is not unfamiliar. If this were to be accepted this trial would be a mere formality. Whether this is the law (and it may well be) need not be now determined because it is apparent that the finding of the Secretary is sufficient in law judged by any recognized standard. Plaintiffs' position is that the matter is one of law in that the Hearing Examiner and the Director, and also the Secretary, applied the wrong principle or test to the question whether there had been a valid discovery.

## II.

In substance, plaintiffs maintain that it was improper to judge whether or not there was discovery by applying an objective or prudent man standard. They contend that discovery appears as a matter of fact; that since there was a showing of particles of mineral in the sand on various levels of the claims in question, and since the plaintiffs had a good faith belief that there existed a body of ore at bedrock that this alone was an adequate showing as a matter of law—that it is inappropriate to go behind a manifest belief growing out of the prospecting efforts of the plaintiffs covering a number of years; in other words, that their belief is conclusive and that if they wish to spend their time and money, this, together with the showings, proves the discovery.

Plaintiffs' chief reliance is on the decision of the Supreme Court in Cole, et al. v. Ralph, 252 U.S. 286, 40 S.Ct. 321, 64 L.Ed. 567. The Supreme Court defined a placer discovery as "being scattered particles of gold found in the softer covering of the earth." From this it is argued that the presence of any particles of gold is adequate to constitute a discovery. A careful reading of Cole shows that it did not involve the sufficiency of the showing of metal to constitute a discovery. This was an action between rival claimants and the question was one of priority. The definition relied on is pure dictum which was not given in a context similar to that at bar. The distinction between this type of action and the present contest type of proceeding is discussed in 1 American Law of Mining, 685, § 4.53, wherein it is said:

> "In cases involving rival locators the courts are not primarily concerned with the nature of the discovery or the extent of the mineral value which it has demonstrated. The question is as to which of two contestants is entitled to possession."

A valid *location* may be made on the basis of indications of mineral of such a character as to cause a man to be willing to spend his time and money in following it. "To constitute *discovery* the law requires something more than conjecture, hope, or even indication." 2 Lindley on Mines 770, 771. On page 772 the author confirms and supports defendants' position, saying:

> "The land department, whose function it is to determine in all applications for patent what constitutes a discovery, has uniformly adopted a liberal rule of construction. In the judgment of that tribunal, a mineral discovery sufficient to warrant the location of a mining claim may be regarded as proven when mineral is found and the evidence shows that a person of ordinary prudence would be justified in a further expenditure of his labor and means with a reasonable prospect of success.

> "Expert testimony is permissible to establish this fact, as this is not a matter of 'common knowledge.'

> "The value of a mineral deposit is a matter into which the government does not inquire as between two mineral claimants. Inquiries of this character are confined to controversies between mineral and agricultural claimants.

> "There is a material difference between a discoverer being *willing* to spend his time and money in exploiting the ground and being *justified* in doing so. The former is a question to be answered by the miner himself; the latter would present a question for expert testimony and determination by a jury.

> "But it would seem that the question should not be left to the arbitrary will of the locator. Willingness, unless evidenced by actual exploitation, would be a mere mental state which could not be satisfactorily proved. The facts which are within the observation of the discoverer, and which induce him to locate, should be such as would *justify* a man of ordinary prudence, not necessarily a skilled miner, in the

expenditure of his time and money in the development of the property."

The Department of Interior's prudent man approach has support in the cases, at least as applied to a *contest*.

In the early Department decision of Castle v. Womble, (1894), 19 L.D. 455, 457, it was said:

"Where minerals have been found and the evidence is of such a character that a person of ordinary prudence would be justified in the further expenditure of his labor and means, with a reasonable prospect of success, in developing a valuable mine, the requirements of the statute have been met."

The test has been approved by the Supreme Court in Chrisman v. Miller (1905), 197 U.S. 313, 25 S.Ct. 468, 49 L.Ed. 770.

█ █ Still later, in Cameron et al. v. United States, 252 U.S. 450, 40 S.Ct. 410, 64 L.Ed. 659, the Supreme Court recognized the proposition that whether there has been requisite discovery is a question of fact to be first decided by the Secretary of the Interior; moreover, the Court cited the Chrisman test with approval, and said:

" * * * A reading of each decision in its entirety, and not merely the excerpts * * * makes it plain that the Secretary proceeded upon the theory that to support a mining location the discovery should be such as would justify a person of ordinary prudence in the further expenditure of his time and means in an effort to develop a paying mine. That is not a novel or mistaken test, but is one which the Land Department long has applied and this court has approved. Chrisman v. Miller, 197 U.S. 313, 322, 25 Sup.Ct. 468, 49 L.Ed. 770."

It must be concluded that the trial examiner, the Director and the Secretary, employed the correct standard, or test, in evaluating the question of location and discovery.

### III.

█ A further argument of plaintiffs is that they are entitled to a patent by reason of 30 U.S.C. § 38 because of having been in possession for the requisite period demanded by the Colorado statute of limitations. This, however, is not a substitute for a discovery. The Supreme Court made this point clear in Cole v. Ralph, supra, wherein it construed 30 U.S.C. § 38 and held that that section did not disturb or qualify the mining laws, nor dispense with the necessity for discovery. On this it was said:

"As respects discovery, the section itself indicates that no change was intended. * * * Certainly it was not intended that a right to a patent could be founded upon nothing more than holding and prospecting, for that would subject nonmineral land to acquisition as a mining claim."

So it must be concluded that as against the United States a claimant, although shown to have been in possession for many years, is, nevertheless, not relieved of the necessity of establishing location and discovery.

### IV.

█ █ The final question is whether the Secretary was required to reopen the case after the decision of the Hearing Examiner following the assertion by the plaintiffs of the claim based upon the discovery of sand and gravel.

It is to be noted that the record had been completed as of the time that plaintiffs sought to assert this new claim and before the Secretary the matter was tried on this record. In plaintiffs' original application there was no reference to discovery of sand and gravel. Plaintiffs had consistently taken the position that there was a discovery of gold, and this·was the only basis for their claim.

It is to be noted that as to the mining location made on or after July 23, 1955, the discovery of sand and .gravel will not support the issuance of a patent. Both· discovery and location before that date

744

would, therefore, have been necessary. It is to be inferred that the plaintiffs' discovery pre-dated July 23, 1955, but seemingly this was not shown in the amended application.

The refusal of the Secretary to receive evidence or to reopen the case was not arbitrary. These proceedings had been going on for many years and the Government had conducted numerous investigations at great time and expense and this claim could have been asserted at the outset if it were not a product of afterthought. Had it been asserted in the beginning, tests could have been conducted and determination made in one single proceeding. It does not seem unfair, however, for the Secretary to refuse to grant a claimant an additional opportunity under the circumstances which are here presented. There is merit to the contention of the Government that there must be some finality to administrative proceedings and this is a case which demonstrates the necessity for finally bringing matters such as this to an end.

## CONCLUSIONS

The Court is constrained to conclude that the administrative rulings were here correct. There was ample evidence from which it could be determined by the triers of the facts that the showings were insufficient to constitute a discovery of precious metal. It is certainly open to the Secretary to select and accept as a basis for his decision the testimony of the witnesses offered on behalf of the Government. From this it was apparent that the Government engineers made conscientious and careful tests and observations in an effort to find showings which at least promised that there was present at lower levels mineral in some quantity. Contrary to the contention of plaintiffs the Secretary did not hold that a discovery must be of ore which is commercial in quality. The Secretary merely concluded that there must be showings which would cause a prudent man to spend his time and money. This is a standard which recommends itself for solution of problems such as the present one.

From the foregoing it is apparent that the Court is severely circumscribed in the review of this kind of decision. It does not have dispensing powers but must limit itself to the framework presented to it and the fact that it may be sympathetic to the efforts of claimants—plaintiffs—does not mean that it can reward their efforts and optimism in disregard of the decision of the Department based upon expert investigation and opinion. To do so would indeed be arbitrary.

It follows that these proceedings were properly conducted and the correct rules and principles were applied and that the plaintiffs were not deprived of any rights, constitutional or otherwise. It is, therefore,

Ordered that the complaint be, and the same is hereby dismissed.