## STEWART MINING COMPANY v. ONTARIO MINING COMPANY.

### ERROR TO THE SUPREME COURT OF THE STATE OF IDAHO.

No. 205. Argued March 17, 18, 1915.—Decided April 26, 1915.

The locator of a mining claim has the right under § 2322, Rev. Stat., to the surface included within the lines of his claim; and, if a vein has its top or apex within the claim, he may follow such vein downward, although it may depart from a perpendicular in its downward course, outside of the vertical side lines of the location that is, into adjoining grounds within the limited lines expressed in the statute.

The strike and the dip of a vein must not be confounded nor the rights dependent upon them confused.

Where the state court does more than merely decide whether the apex of a vein is or is not within the location, but also construes the statute under which plaintiff in error asserts its rights there is a question of law as well as of fact and this court has jurisdiction under § 237, Judicial Code.

Extralateral rights to a vein under § 2322, Rev. Stat., depend upon the position of its top or apex.

Accepting the proper definition of apex of a vein as all that portion of a terminal edge of a vein from which the vein has extension downward in the direction of the dip, it does not appear that the apex of the vein involved in this action was within plaintiff's claim and therefore no extralateral rights exist under § 2322, Rev. Stat.

Quære whether under § 2322 Rev. Stat. a vein can be pursued in the direction of its strike at an angle of less than 45 degrees to the course thereof.

23 Idaho, 724, affirmed.

THE facts, which involve the construction of Rev. Stat., § 2322, and the right of the locator of a mining claim to follow the vein downward, are stated in the opinion.

*Mr. Milton S. Gunn* and *Mr. Charles S. Thomas*, with whom *Mr. Edgar T. Brackett,* *Mr. Nash Rockwood* and *Mr. William E. Cullen, Jr.*, were on the brief, for plaintiff in error.

*Mr. Myron A. Folsom* and *Mr. John P. Gray*, with whom *Mr. James E. Gyde* was on the brief, for defendant in error.

MR. JUSTICE McKENNA delivered the opinion of the court.

Contest between the mining companies (they were respectively plaintiff and defendants in the trial court and we shall so designate them) as to certain ore bodies lying beneath the surface of the mining claim of defendants, called the Ontario. Plaintiff asserts ownership to the ore bodies by reason of being owner in fee and in possession of a quartz lode mining claim named the Senator Stewart Fraction Lode Claim. It is alleged that within such claim there "is a certain vein or lode bearing silver, lead and other valuable minerals of which said vein or lode and the ore and mineral therein contained this plaintiff is the owner in possession and entitled to the possession. That the top or apex of said vein or lode crosses the easterly end line of said claim at approximately the center thereof between corners Nos. 1 and 2 and extends within the boundaries of said claim in a westerly direction, following the general course of said claim, for a distance of seven hundred five (705) feet, more or less. That said vein or lode has a downward course and descends into the earth southerly and beyond the south boundary and side line of said claim into and beneath the surface of the Ontario quartz lode mining claim, designated as Survey No. 755."

Plaintiff prayed for an accounting and for an injunction against the further mining or extracting of the ore.

Defendants' answer set up opposing contentions and denied the rights alleged by plaintiff. In a cross-complaint defendants asserted title and prayed that it be quieted against the claim of plaintiffs. The judgment of the trial court responded to this prayer. The judgment was affirmed by the Supreme Court of the State, 23 Idaho, 724. This writ of error was then granted.

The case is not embarrassed by any dispute of facts of the title to the respective claims, or of their boundaries or of the mining of the ore by defendants. The controversy turns entirely upon the construction of § 2322, Rev. Stat., of the United States. It provides that locators of mining locations "shall have the exclusive right of possession and enjoyment of all of the surface included within the lines of their locations, and of all veins, lodes, and ledges throughout their entire depth, the top or apex of which lies inside of such surface-lines extended downward vertically, although such veins, lodes or ledges may so far depart from a perpendicular in their course downward as to extend outside the vertical side-lines of such surface locations. But their right of possession to such outside parts of such veins or ledges shall be confined to such portions thereof as lie between vertical planes drawn downward as above described, through the end-lines of their locations, so continued in their own direction that such planes will intersect such exterior parts of such veins or ledges. And nothing in this section shall authorize the locator or possessor of a vein or lode which extends in its downward course beyond the vertical lines of his claim to enter upon the surface of a claim owned or possessed by another."

It will be observed, therefore, to summarize the rights conferred by the section, that the locator of a mining claim

has the right to the surface included within the lines of his claim and if a vein has its top or apex within the claim he may follow such vein downward, though it may depart from a perpendicular in its downward course outside "of the vertical side lines" of the location—that is, into adjoining grounds.  The length of the side lines and the claim they bound are limited by the end lines, or, as it is expressed in the statute, by vertical planes drawn downward through the end lines.  *Iron Silver Mining Co.* v. *Cheesman,* 116 U. S. 529; *Iron Silver Mining Co.* v. *Elgin Mining Co.,* 118 U. S. 196.

The statute would seem to call for no effort of construction, and the distinction which obtains in the parlance of miners and in the cases, between the strike or course and the dip of a vein, is compelled by the statute and marks accurately the linear and extralateral rights of a location. This certainly, as far as any language can do it, expresses the distinction which must be observed, however various may be the natural conditions.  In other words, the strike and the dip of a vein must not be confounded nor the rights dependent upon them confused.

What, then, do they determine in the present case?  The plaintiff asserts, as we have seen, that the vein has its top or apex within one of its claims (the Senator Stewart Fraction Lode) and asserts further that the vein extends downward beyond the side lines, within the limits of the end lines extended vertically, to and beneath the claim of defendants, and includes the ore bodies mined by the latter.

These are the facts as found by the trial court:

"That no part of the apex of the said ore bodies lies within the lines of the Senator Stewart Fraction lode mining claim.

"That the plaintiff is the owner, in the possession and entitled to the possession of the Senator Stewart Fraction lode mining claim described in the complaint, with the exception of that part thereof in conflict with the Quaker

lode mining claim, which conflict is not material to any issue involved in this case.

"That within said Senator Stewart Fraction lode mining claim there is a vein or lode of mineral-bearing rock in place which on its onward course crosses the south side line of said Senator Stewart Fraction lode mining claim, and has a course about North 30° East, and the said vein on its onward course does not reach any other line of said claim. That the said vein is cut off on its onward course by a large fault near the north line of said claim, called the Osburn fault in this case. That the said vein on its downward course passes underneath the east line of said claim, which is described in the patent as the end line of said claim, which line connects Corners 1 and 2 of said claim. That the fault which cuts off said vein on its northerly end has a northwestwardly and southeastwardly course and dips southwestwardly. That the end of the vein against said fault has a course North 41° West. That the end of said vein against said fault has a steeply inclined downward course southeasterly.

"That the end of the vein as the same is terminated on the onward course of the said vein against the fault hereinbefore referred to is the end of the vein on the line of its dip, and the said vein is undercut by the said fault in such manner that if the country below the fault was eroded, it would present the appearance of an overhanging cliff.

"That the said fault which terminates the said vein upon its onward course is a fault of great magnitude, and for a short distance above the fault has disturbed and broken and slightly deformed the vein, and enclosing rocks in close *proximately* [proximity] to said fault in some places for a greater distance from the fault than in others. That the vein is also at various places cut by other faults which tend in places to flatten the vein somewhat upon its downward course.

"That the said vein is continuous on its onward course

from the line of contact with the said great fault in this case called the Osburn fault southerly to the ore bodies within the Ontario lode mining claim and has been followed upon the level in the drifts by the miners from the said edge of the vein to the ore bodies in the Ontario mining claim.

"That the top or apex of said vein which on its onward course crosses the south side line of said claim is practically level."

The Supreme Court affirmed the findings and added that the end of the vein against the Osborne fault was "turned, curled, or cupped upward, caused by the disturbance which created the fault and cut off the vein." And also said: "It further appears that this vein is undercut by the Osborne fault in such a manner that if the fault were eroded or washed away, it would leave the vein standing out as an overhanging cliff." The following diagram exhibits the relations of the claims, the location of the vein and the Osborne fault:

The contention of plaintiff is that the vein A-B runs along the Osborne fault on the dotted line b-c and passes across the end line 1-2 at right angles. It is further contended that the apex of the vein is along the line A-B to the Osborne fault and continues with what is asserted to be the edge of the vein along the dotted line b-c and that, therefore, the claim is entitled to an extralateral right on the vein measured between the vertical plane 1-2-3 and a plane parallel to that plane drawn through the point where the vein passes through the southerly side line of the claim. These planes include the ore bodies in dispute.

Defendants oppose the contention and insist that the vein terminates at the Osborne fault and that the edge of the vein along the fault does not constitute the apex of the vein of the ore bodies. The Supreme Court accepted this view, as we have pointed out, and, in emphasis of it, said: "We cannot understand how an overhanging end edge of a vein, cut off as the evidence shows this has been, can in any sense be called the top or apex of the vein."

On first impression it would seem that the state courts rested their judgments solely on a question of fact; in other words, decided that no part of the apex of the vein lay within the lines of the plaintiff's claim. Or, to state the finding differently, that what plaintiff asserts to be the apex is the side edge of the vein on the line of its dip, the vein crossing the south side line of the Senator Stewart Fraction at about right angles. This finding is undoubtedly one of fact and defendants, asserting it to be such, make a motion to dismiss the writ of error for want of jurisdiction in this court on the ground that such fact was sufficient to uphold the judgment, and contend that it is hence immaterial that the court discussed and decided other questions Federal in their nature. For this cases were cited, among others, *Mammoth Mining Co.* v. *Grand Central Mining Co.*, 213 U. S. 72.

But this is an imperfect view of the decision of the Su-

preme Court. The court observed that the decisive assignment of error was lodged against the finding that the vein had not its apex in the Senator Stewart Fraction claim, and, after referring to the testimony of witnesses as to the inclination and apparent strike of the vein at certain points, said: "But, taken as a whole, the evidence supports the findings, and the controversy arising on this appeal becomes a question as to the correct interpretation and application of the rule of law that should apply to the facts of the case. The whole question rests on the correct application of the apex and extralateral rights provisions of § 2322, U. S. Revised Statutes." The court further observed that it would attempt no new application of the statute but would seek and apply the construction which this court had made; and, after consideration of the decisions and an analysis of § 2322, and especially of the words "downward course," said: "To pursue a vein in the direction of its strike at an angle of less than 45 degrees to the course thereof would clearly not be following the vein on its 'downward course' as authorized by the statute."

It is manifest, therefore, that the court did more than decide the question of fact, and made its judgment to depend as well upon a question of law. The motion to dismiss, therefore, is denied.

The view expressed by the Supreme Court that the angle of a vein of less than 45 degrees to its course would not be downward "'as authorized by the statute'" is especially attacked by plaintiff as the capital error of the decision of the court.

We pretermit for the present a consideration of the ruling and go back to the statute for the elements of decision. They are simple enough in expression, but the contests of interest and ingenuity, induced or justified by physical conditions, have given rise to much litigation, and quite a body of jurisprudence has been erected in the

exposition of the rights conferred by the statute. The number and fullness of the cases spare us much discussion, and we may rapidly indicate the elements which determine the decision of this case.

The statute gives a right of possession to the locator of a vein, the apex of which lies within the lines of his location, not exceeding in extent 1,500 feet in length by 600 feet in width, § 2320, Rev. Stat. And a vein is a well-defined body of mineral within enclosing rocks. It has an onward course and a downward course, and at what angle to the former the latter may be followed in the exercise of the extralateral right has been made a question in this case and argued at much length by plaintiff. The Supreme Court of the State decided, as we have seen, that the vein could not be pursued downward at an angle of less than 45 degrees to its course. We, however, are not required to pass upon the question.

The findings of fact afford a simpler ground of decision. The primary condition which plaintiff, to justify a claim to the ore bodies in controversy, had to establish was that the apex of the vein was within the Senator Stewart Fraction claim; but the fact was found the other way.

The findings are graphically represented by the diagram which we have given. It will be observed from it, and to quote the findings, that the vein on its onward course (strike) crosses the south line of the Senator Stewart Fraction claim and continues northeasterly (N. 30° E.) to the Osborne fault. It reaches no other line of the claim, being cut off by that fault. The vein on its "downward course" (dip) passes underneath the east end line (so described in the patent) of the claim. And both the trial court and the Supreme Court found that the termination of the vein at the Osborne fault is not the top or apex of the vein. In other words, what plaintiff claims to be the apex of the vein is its side edge on the line of the dip.

From this it follows that no extralateral rights can be

predicated upon it, and we may put to one side the view expressed by the Supreme Court that a vein cannot be pursued along its strike at an angle of less than 45°. And the conclusion of the court that the top or apex of the vein was not within the Senator Stewart Fraction claim has the concurrence of the judgment of the Circuit Court of Appeals of the Ninth Circuit in *Stewart Mining Company* v. *Bourne*, 218 Fed. Rep. 327, where the same ore bodies were in controversy upon rights asserted to appertain to that claim. That case was submitted on the evidence in this, supplemented by an agreement as to certain facts. The court, by Circuit Judge Ross, remarked that a diagram introduced in evidence (substantially like that given above) and a certain model (not exhibited here, counsel explaining that it had been broken), the correctness of which was practically conceded, demonstrated the situation of the vein by actual development and made it "plain that this vein was not turned or bent at the point of its contact with the Osborne fault, and did not and does not extend from that point along that fault, but, on the contrary, came to an abrupt end there. True, further to the northeasterly and at much greater depth the ore is shown by the model to have extended to the Osborne fault, and from that point to have followed the fault northeasterly to and out of the easterly end line of the claim [the dotted line b and c of the diagram]. But we think it is manifest that such portion of the ore body cannot in any proper sense be regarded as any part of the apex of the vein."

The court also referred to the allegation of the plaintiff in that case, which is identical with the allegation in the present case, that the vein was in Senator Stewart Fraction claim and that its apex crossed the easterly end line of the claim at approximately the center thereof, and said: "The evidence showing, as has been above pointed out, that there is no such apex, the suit of the plaintiff must necessarily fail."

A like declaration may be made in the case at bar. The fact is fundamental. It is rudimentary that extralateral rights to a vein depend upon the position of its top or apex.

But principles of law are asserted by plaintiff which, it is insisted, determine against the conclusion of both courts. It is difficult to state or estimate the principles singly. An apex is, on cited authority, defined to be "all that portion of the terminal edge of a vein from which the vein has extension downward in the direction of the dip." And it is further said that the definition has been approved in Lindley on Mines, because as therein expressed it "involves the elements of terminal edge, and downward course therefrom." We may accept the definition. In its application, however, it immediately encounters a question of fact—the locality of the terminal edge; and in this case the state courts did not find it to be where plaintiff asserted it to be.

But counsel make much of—indeed, appear to give absolute effect to—the other element of the definition, that is, "extension downward" or "downward course" from the terminal edge. But this element again has no significance whatever independently of the "terminal edge" of the vein, found, as we have said, not to be where plaintiff contended it to be. Plaintiff's contention is that the terminal edge extends 200 feet along the Osborne fault and from thence there is a pronounced downward course to the southerly boundary of the Stewart Fraction claim, and that therefore the two elements essential to an apex in the accepted definition exist, namely, "terminal edge and downward course" within "vertical planes parallel with the vertical planes of the end lines of the claim extended downward." If it could be conceded that the apex of the vein runs along the Osborne fault, the conclusion plaintiff contends for might also be conceded, but the fact is found the other way by the state courts in this case. The finding is dominating, and on account of it the judgment must be

sustained.   It is immaterial what view the court had or expressed of the angle the downward course of the dip must be to the strike.

The next contention of plaintiff is that there is neither allegation nor proof of the discovery vein in the Senator Stewart Fraction claim but that a presumption arises from the patent that a discovery was made and the claim properly located with reference thereto.   In other words, that a discovery vein existed and that the claim was located lengthwise with it, and that the first presumption is conclusive, and the other also, in the absence of anything to the contrary appearing.   And it would seem to follow from the contention that the presumption includes as well the position of the apex and other attributes necessary for the assertion of extralateral rights.   It would, indeed, be difficult to entertain such a presumption in view of the conduct of the plaintiff, its pleadings and testimony and the careful investigation and consideration which the state courts gave to the case.   We may omit, therefore, a detailed consideration of plaintiff's contention.   The rights asserted in the pleadings and to which the testimony was directed to sustain were based upon the possession of the vein which we have described. *Stewart Mining Co. v. Bourne*, 218 Fed. Rep. 359.

*Judgment affirmed.*