UNITED STATES ex rel. CORBIN v.
DOYLE, President Board of Ed-
ucation, et al.

No. 6947.

United States Court of Appeals for the
District of Columbia.

Argued Oct. 22, 1937.

Decided Nov. 15, 1937.

Rehearing Denied Dec. 20, 1937.

George E. C. Hayes and James A. Cobb, both of Washington, D. C., for appellant.

Elwood H. Seal, Corp. Counsel, Vernon E. West, Principal Asst. Corp. Counsel, and T. Gillespie Walsh, all of Washington, D. C., for appellees.

Before ROBB, GRONER, and MILLER, Associate Justices, and WHEAT, Chief Justice of District Court.

GRONER, J.

This is a mandamus proceeding brought by Charlotte Corbin, petitioner (appellant), to compel the respective respondents, as members of the Board of Education and as officials in the public school system, to appoint her to the position of teacher of Latin in the public school system of the District of Columbia. The respondents answered, and petitioner filed a replication to which respondents demurred. The lower court sustained the demurrer, but later granted a rehearing with leave to petitioner to amend her replication, to which amended replication respondents again demurred, and the lower court on January 29, 1937, again sustained the demurrer. Petitioner elected to stand on the amended replication, so the court ordered that the petition be dismissed. An outline of the facts is as follows:

In June, 1929, the District of Columbia Board of Education referred to the committee on rules the question of the revision of eligibility requirements for teachers. On the same day the board adopted a rule which

provided that from and after July 1, 1930, and until June 30, 1933, unless otherwise ordered, the basic eligibility requirements as to licenses for teachers as specified in chapter IX, section 5, of the rules of the board should be as follows: For junior high schools 2C salary grade and senior high schools 3A salary grade, a master's degree from .an accredited college. A few days later it was found that this provision was in error, and on July 1, 1929, the board entered an order postponing the effective date of the requirement of a master's degree from July 1, 1930, to July 1, 1933. There was no other change until November 20, 1929. On that day the committee on rules recommended a complete revision of the rules which had been adopted by the board some two years before and which constituted chapter IX. The new rules were at the same time submitted, and the board approved the report. The material parts of the new chapter IX were:

"Section 2. 1. All candidates must take the examinations for the licenses herein set forth and for the licenses which may hereafter be set forth, in accordance with the rules and regulations specifically relating thereto as contained in documents issued by the Board of Examiners from time to time and as generally set forth in this section, viz.: * * *

"IX. Junior High Schools: To teachers of academic and scientific subjects, who are required to be graduates of an accredited college; or to be graduates of an accredited normal school with five years of teaching in a (senior) high school.

"The additional basic eligibility requirements for this license over and above those prescribed in the preceding sections are those specified under License XI for academic and scientific subjects in senior high schools. * * *

"This license qualifies the holder when appointed to receive the salary specified for teachers assigned to Class 2 Group C of the Act approved June 4, 1924. * * *

"XI. Senior High Schools: To teachers of academic and scientific subjects who are required to be graduates of an accredited college; or to be graduates of an accredited normal school with five years of teaching in a high school. The additional basic eligibility requirements for this license over and above those prescribed in the preceding section are:

"(1) A degree from an accredited college; or graduation certificate from an accredited normal school, such normal school graduate to have had at least five years' experience as a teacher in a high school. * * *

"Provided that, unless otherwise ordered by the Board of Education, from and after July 1, 1930 and until June 30, 1933, the accredited normal school referred to in (1) above shall be one requiring a three-year course, Provided further that from and after July 1, 1933, the said normal school shall be an accredited teachers' college requiring a four-year professional course of study satisfactory to the Board of Examiners and that the said graduation certificate shall be a bachelor's degree from that college. Provided further, that from and after July 1, 1933, the degree referred to in (1) above shall be a master's degree from an accredited college, together with courses in education or professional courses satisfactory to the Board of Examiners. * * *"

We are not advised of the effect of this revision, but we assume the new rules of November 20th superseded all prior rules, even the rule of June 26th and July 1, 1929, which we mentioned above. Certainly there is a conflict between them, and therefore the later rules would seem to control. In our view the new rules should be interpreted to require as to grades 3A and 2C either (a) a degree from an accredited college, or (b) a graduation certificate from an accredited normal school, plus five years' experience as a teacher. These requirements were to continue in force until July 1, 1930, when the provision as to normal schools was to be extended to require such normal school to be one requiring a three-year course. Thereafter, this requirement was to prevail until July 1, 1933, at which time additional restrictions were provided; namely, 'the degree required in (a) above should be a master's degree and the graduation certificate required in (b) should be increased to a bachelor's degree from an accredited teachers' college based on four years' professional course. In July, 1930, there was issued what was known as School Document No. 28. This document set forth what would be the basic eligibility requirements from and after July 1, 1933. The complete document is not in the record, but it is stipulated that it provided that for 3A and 2C salary grades, a master's degree would be required. This provision was in line with the rule of June 26th and July 1, 1929. So far as the record shows, the provision in the November 20, 1929, rules to the effect that after July 1, 1933, a license would be issued

also to a person holding a bachelor's degree from an accredited teachers' college was omitted.

Coming now to the particular facts of this case, it appears that in February, 1933, a circular was issued by the Board of Examiners announcing the regular spring examinations for licenses IX (2C salary grade) and XI (3A salary grade). Under the heading "Eligibility Requirements," it was announced that:

"The eligibility requirements for admission to this examination are as set forth in School Document No. 28 * * *

"Except

"That each candidate must submit satisfactory evidence that he has, at the time of the examination, a master's degree from an accredited institution of higher learning satisfactory to the Board of Examiners or that at the time of the examination, he has a bachelor's degree from an accredited teacher's college requiring a four year professional course of study satisfactory to the Board of Examiners with five years of successful teaching experience in a high school.

"Or

"That he shall receive a master's degree in time to submit ample proof thereof by 5:00 P.M., Tuesday, June 20, 1933."

It will be observed that this bulletin provided variations of the several rules heretofore set out.

Petitioner presented herself to the examiners pursuant to this bulletin, claiming qualification upon the ground that she possessed a bachelor's degree from an accredited teachers' college and had five years of successful teaching experience. If this were a fact, she met the bulletin requirements as they then existed. That it was the fact is challenged by the board. Counsel say that petitioner had a bachelor's degree from a college but not from a teachers' college, but, although full-handed with information, they have made no effort to incorporate that point into the record, so we pass it by and assume petitioner's qualification. She took the written and oral examinations and successfully passed them and was thereafter notified by the board that as of July 1, 1933, she had been placed upon the eligible lists for appointment to a teacher's position in junior high school 2C grade and in senior high school 3A grade; such eligibility to continue in force for two years. Petitioner's name remained on both lists for more than a year, and was, for most of the time, the only name on the junior high 2C list. Some time in December, 1934, a vacancy occurred in Terrell Junior High School, and petitioner made inquiry concerning it, only to find that without notice to her, her name had several months before been removed from the eligible list. The removal of her name was at the order of the superintendent, who acted on the view that the rules required a master's degree of persons on the junior high eligible list. There was administrative consideration of petitioner's case by the board, and in February, 1935, the removal of her name was finally affirmed. The vacancy then existing was filled by the appointment of one Miss V. D. Wilson, whose name had been transferred from the senior high school list to the junior high school list. Miss Wilson possessed a master's degree. After the lapse of some seven months, petitioner instituted this proceeding.

The trial judge found that petitioner possessed a bachelor's degree from an accredited teacher's college, but held that even though the rules were somewhat ambiguous it was the general understanding and interpretation of the board that the rules as of and after July 1, 1933, required a master's degree as a condition to appointment to a teacher's position in the junior high schools. Apparently the ground of the holding was that, though petitioner was qualified under the eligibility rules announced for the examination, she was not qualified for appointment to a teacher's position after July 1, 1933, because of the requirement of a master's degree effective as of that date. We concur with the learned judge of the court below in his criticism of the lack of clarity in the rules, and we also think that the changes made in them tended more to confusion than to clarification; but if we were compelled to place our decision solely on the ground adopted by the court below, we should be hard put for reasons to sustain it. In the view we take of the case, the decision must go against petitioner, but on other grounds apparently not passed on or considered in the lower court.

First. The first ground is this:

There is no dispute that the rules of the board effective at all times required that applicants pass a written and an oral examination. Petitioner, as we have seen, took the written examination in April, 1933. Conceding she was at that time qualified upon successfully passing the written and oral

examinations to receive a license under the existing rules and regulations and the conditions named in the circular announcing the examination, the record nevertheless shows that on May 3, 1933, some two weeks after she had taken the written examination, but before she had taken the oral, the Board of Education adopted certain new rules revising the eligibility requirements for a number of teaching positions. Among these new rules was one providing that in class IX, which is the junior high school 2C grade referred to above, the basic eligibility requirement for a license should be a master's degree from an accredited college, plus the equivalent of not less than twenty-four hours' semester credits. This rule appears to have become effective immediately, and at the time it became effective petitioner, as we have seen, had taken the written exam-ination, but not the oral one. She had not, therefore, taken the full examination, and so when she presented herself on May 26, 1933, to take the oral examination the prevailing rule entitled her to take the oral examination as to the senior high license, but gave her no right to be examined for the junior high license. This, it is true, is an anomalous situation, doubtless growing out of the welter of frequent and conflicting changes in the rules. But, anomalous though it may be, it does not affect the power of the board to make the rule and unless, therefore, the fact that petitioner had taken a part of the examination but not the complete examination, gave her some vested right which could not be affected by a change of rules, she obviously was not qualified to be examined for the junior license. In our view the two examinations, written and oral, are an entirety, and a person to be licensed must be qualified at all times during the examination as well as before the examination. We think petitioner acquired no right which could not be taken from her by a change in the rules prior to her finishing the whole examination; and that is precisely what happened. In this view the examiner violated the rule when he gave petitioner her oral examination on May 26th for the junior high license. She was eligible to take the senior high examination, and she passed it. Her name was duly certified on the senior high list, and has not been removed from that list. The fact that she was also placed on the junior high list and that the officials of the school system overlooked the new rule effective May 3, 1933, until a vacancy occurred and the place on the school staff was about to be filled a year later does not, we think, enlarge petitioner's rights. Since petitioner and the examiner were equally bound by the rule of May 3d, it was an error for the examiner to permit petitioner to take the oral part of the examination for the junior grade because she lacked the necessary qualifications under that rule.

We, therefore, hold that the board had the legal power to change the eligibility rules from time to time as it thought wise and proper, and while it may be remarked that it is irregular and most unusual to change a rule in the middle of an examination, still nothing appears anywhere to challenge the absolute right of the board to do this very thing. And in view of the fact, as we have pointed out, that the bulletin announcing the examination and the then existing rule regulating its terms were in apparent conflict, the change may have been made to carry out the intention of the rule. The board's authority in the premises, though of course it must be reasonably and fairly exercised, is nevertheless plenary,[1] and the policy of the courts is not to interfere, except where there is a clear abuse of discretion. We therefore think it is unnecessary to decide whether the eligibility rule effective as of July 1, 1933, was, as the lower court decided, a rule applying to appointments thereafter to be made, or whether it was merely a rule affecting eligibility after that date to take the examination. Instead, we prefer to put our decision on the ground that the board having on May 3d, before the completion of the spring examinations begun in April, adopted a binding rule requiring a master's degree for a license on the junior high school eligibility list, petitioner became subject thereto, and that rule was as binding on her as though it had been enacted prior to the day fixed for the commencement of the examination.

Second. There is another reason why the writ of mandamus should not issue. Petitioner prays that a writ issue to respondents commanding them to appoint her

[1] D.C.Code 1929, T. 7, § 34a: "The Board of Education is authorized to establish the eligibility requirements and prescribe such methods of appointment or promotion for teachers in the junior high schools as it may deem proper, subject to provisions of law covering such matters now in effect or which may hereafter be enacted." Feb. 28, 1929, 45 Stat. 1344, c. 357, § 2.

to the position of teacher of Latin effective as of February 13, 1935, "at which time a person other than petitioner was appointed to the position set forth."

The petition shows that the person to whom petitioner refers as having received the appointment was Miss Wilson, and it was stated by counsel for both sides at the hearing that this position is still held by Miss Wilson. It is true it was also stated at the bar that the school board might transfer Miss Wilson to some other place or might divide up the classes so that she would have fewer pupils, but we think the necessary effect of a writ on the grounds prayed would be to require that the position now filled by Miss Wilson be vacated and petitioner placed in it. In other words, that the occupant of a public office now filled by appointment should be displaced through the writ of mandamus and petitioner installed in the vacated position. In the case of People ex rel. McLaughlin v. Board of Police Com'rs, 174 N.Y. 450, 67 N.E. 78, 95 Am.St.Rep. 596, the Court of Appeals of New York went to the extent of saying that even where the title of a petitioner to an office is clear, that fact does not except him from the general rule that when some one is in actual possession under color of right, mandamus will not lie to determine the title. And in United States ex rel. Crow v. Mitchell, 67 App.D.C. 61, 89 F.2d 805, we said that the nearly universal rule on this subject goes to the extent of holding that the writ is improper in all cases in which the title to the office is in dispute.

Though this petition strongly appeals to our sympathy and though we read the record fully conscious of the fact that petitioner has been hardly dealt with, still the lack of system, discipline, and order in the affairs of the board cannot affect the legal rights of the parties. Mandamus, as we have said again and again, will not issue in any case in which the duty sought to be controlled is not so plainly prescribed as to be the equivalent of a positive command. Nor will it be granted in cases where the duty depends upon a statute, or, as in this case, a rule, the construction of which is not free from doubt; and in any case it is granted with extreme caution where the granting will result in interference by the judicial department with the internal management of an administrative board of the government. We think, therefore, the refusal to award the writ was correct.

**Affirmed.**

